SMITH & JOHNSON CONSTRUCTION CO. et al., Appellants,

v.

OHIO DEPARTMENT OF TRANSPORTATION et al., Appellees.

[Cite as *Smith & Johnson Constr. Co. v. Ohio Dept. of Transp.* (1998), 134 Ohio App.3d 521.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE10–1401.

Decided June 30, 1998.

524

*Schottenstein, Zox & Dunn* and *Patrick A. Devine,* for appellants Smith & Johnson Construction Co. and Robert Johnson.

*Betty D. Montgomery,* Attorney General, and *Robert L. Schlatter,* Assistant Attorney General, for appellee Ohio Department of Transportation.

*Carlile, Patchen & Murphy, Michael H. Igoe* and *Amy R. Goldstein,* for appellee R.F. Scurlock Co.

---

JOHN C. YOUNG, Judge.

Appellants, Smith & Johnson Construction Co. and Robert Johnson ("Smith–Johnson"), appeal to this court from the trial court's decision adopting the magistrate's recommendation to deny appellants' motions for declaratory and injunctive relief from appellee Ohio Department of Transportation's ("ODOT's"), award of a $3,818,130 road improvement contract to appellee R.F. Scurlock Company ("Scurlock"). See ODOT Tabulation of Bids dated December 31, 1996. The record reflects the following: The contract awarded concerns project No. 888(96), which was to improve a 1.51 kilometer section of State Route 73 in Scioto County. Pursuant to the provisions set forth in R.C. 5525.01 *et seq.,* bids were received from various "vendors" through December 18, 1996, including bids from vendors Smith–Johnson and Scurlock. On December 24, 1996, the contract was awarded to the lowest bidder, appellee Scurlock, whose bid was approximately $165,700 under that of the next lowest bidder, appellants Smith–Johnson. The contract documents were signed by Scurlock and ODOT on December 31, 1996 and on January 17, 1997, respectively, and Scurlock posted the contract bonds required by R.C. 5525.16. (Magistrate's decision filed March 25, 1997, at 1.)

Appellants filed their motions seeking declaratory judgment and injunctive relief from the contract award on the grounds that the ODOT contract should not have been awarded to Scurlock because the Scurlock bid was non-responsive and the Scurlock bid bond, which was required to be posted pursuant to R.C. 5525.01 in order to bind the vendor and secure its bid, was statutorily defective. Appellants contend that the defective bid and bond gave Scurlock a material advantage over other bidders by permitting Scurlock either to accept the contract award based upon a "conditional" bid or walk away from the contract without penalty by virtue of its defective bid bond.

In adopting the magistrate's decision, the trial court denied appellants' motions for declaratory and injunctive relief. Appellants argue that the trial court erred in determining that the contract was valid and not subject to injunction for the following reasons: when Scurlock submitted its bid, it failed to list a cost of "clearing and grubbing" work, which is a term used to describe the job of site preparation prior to actual construction or road improvement. The cost of grubbing and clearing was estimated by ODOT to be approximately $100,000. As

well, Scurlock posted a bid bond which was not in conformity with that requested by ODOT.

Appellants argue that these factors mandated that ODOT reject the Scurlock bid pursuant to statute and that the "incomplete" bid and defective bid bond gave appellee Scurlock an unfair advantage over appellants and other bidders. See R.C. 5525.08 and 5525.11. ODOT officials contend that their practice is to treat unpriced work items as being priced at a zero dollar cost, and that the statute permits ODOT to award a contract upon a defective bid, as long as the bid defect is not deemed substantial or material. (ODOT brief, at 5–6.) The magistrate found that "unless ODOT's position is clearly untenable pursuant to statute, or otherwise constitutes an abuse of discretion, ODOT's awarding of the contract to Scurlock must be upheld. The presumption is that the director properly performed his duties." (Magistrate's decision, at 2.) The trial court upheld and adopted the magistrate's decision, and filed its final judgment entry denying appellants' motions on October 17, 1997. This appeal followed.

Appellants assert the following assignments of error:

"1. The trial court erred in not enjoining ODOT's contract based on an invalid and nonresponsive bid.

"2. The trial court erred in finding the bid of R.F. Scurlock was responsive and did not give Scurlock a competitive advantage over the other bidders.

"3. The trial court erred in finding that R.F. Scurlock's statutorily deficient bid bond did not invalidate the contract award to R.F. Scurlock."

 The granting of declaratory judgment and injunctive relief are matters of judicial discretion. *Control Data Corp. v. Controlling Bd. of Ohio* (1983), 16 Ohio App.3d 30, 35, 16 OBR 32, 36–38, 474 N.E.2d 336, 341–342. A trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion. *Id.* See, also, *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141–1142. The term abuse of discretion connotes more than an error of judgment, "it implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Id.*

 Appellee ODOT is granted statutory authority to enter into competitive bid contracts with contractors for highway construction and repair pursuant to R.C. 5525.01 *et seq.* A "statute which confers upon a board of public officers authority to make a contract 'with the lowest and best bidder,' confers upon the board discretion with respect to the contract." *Hardrives Paving & Constr., Inc. v. Niles* (1994), 99 Ohio App.3d 243, 246, 650 N.E.2d 482, 484. "The standard of review for trial courts in determining whether a [governmental body] has appropriately awarded a competitive bidder a contract is whether the [body]

abused its discretion." *BFI Waste Sys. of Ohio v. Garfield Hts.* (1994), 94 Ohio App.3d 62, 70, 640 N.E.2d 227, 231. The Ohio Supreme court has held:

"Generally, courts in this state should be reluctant to substitute their judgment for that of [government] officials in determining which party is the 'lowest and best bidder.' 'The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action.'" *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202, 204.

The proof necessary to support the granting of an injunction against an agency's award of a contract must be clear and convincing. *W.C.I./Waltek v. Ohio Bldg. Auth.* (Aug. 4, 1994), Franklin App. No. 93APE11–1583, unreported, 1994 WL 409780.

Bids for ODOT contracts are to be submitted and evaluated in accordance with the provisions set forth in R.C. 5525.01 *et seq.* In its submitted bid, appellee R.F. Scurlock Company left "blank" the unit bid price for its clearing and grubbing services. Appellants argue that this error was substantial as to a major part of the 888(96) project and therefore rendered the bid nonresponsive and invalid.

R.C. 5525.08 provides in part that, upon discovery, "the director shall reject such [nonresponsive] bid, despite the fact of prior qualification of such bidder." Appellants contend that Scurlock's defective bid and bid bond allowed Scurlock's lower bid to be considered for award of the contract without binding Scurlock to perform under the bid. Appellants appear to urge that the director was mandated by the provisions of R.C. 5525.08 to reject the Scurlock bid as nonresponsive and that he did not have discretion to accept the bid as being one describing a zero dollar cost for grubbing and clearing work. We disagree.

The first question to be considered is whether Scurlock's bid was nonresponsive and invalid, and thereby subject to rejection by the director pursuant to R.C. 5525.08. Ohio courts have held that "[w]hether the bid submitted complied with the law relative to competitive bidding is determined * * * by the character of the bid submitted." *State ex rel. Coleman v. Munger* (1948), 84 Ohio App. 148, 153, 39 O.O. 170, 172, 83 N.E.2d 809, 812. This court has held:

"Although an agency has broad discretion to grant bids based on rules it has established, the legislature has declared that an agency must award its bid to the lowest 'responsive and responsible bidder' as defined in R.C. 9.312." *Lease-*

*way Distrib. Centers, Inc. v. Ohio Dept. of Adm. Serv.* (1988), 49 Ohio App.3d 99, 103, 550 N.E.2d 955, 960.

R.C. 9.312 provides in part:

"[A] bidder on the contract shall be considered responsive if his proposal responds to bid specifications in all material respects and contains no irregularities or deviations from the specifications which would affect the amount of the bid or otherwise give him a competitive advantage." See, also, *Leaseway* at 103–104, 550 N.E.2d at 959–961.

In a bid for a construction project, not every variation from the instructions or specifications will destroy the competitive character of the bid. However, a substantial variation, one that affects the bid price and gives the bidder an advantage or benefit not allowed other bidders, will destroy the competitive nature of the bid. *Natl. Eng. & Contracting Co. v. Cleveland* (C.P.1957), 146 N.E.2d 340, 76 Ohio Law Abs. 303. If "a bid complies with the specifications in all material respects, and contains no irregularities which give one bidder a competitive advantage over others, the bid will be deemed responsive, notwithstanding the omission of an item called for by the specifications." *Kokosing Constr. Co. v. Dixon* (1991), 72 Ohio App.3d 320, 328, 594 N.E.2d 675, 680.

R.C. 5525.11 permits the director to enter into contracts based upon a unit price basis, whereby the contractor "shall be * * * paid only for the quantities of work actually performed by him." R.C. 5525.11. Appellee Scurlock submitted a bid for the 888(96) project, listing the bid price for each unit of work to be performed under the contract, except that the cost for "grubbing and clearing," located on line one of the bid form, was left blank. Pursuant to R.C. 5525.11 and 5525.01, the director was authorized to enter into a unit price contract in which the unit price offered to perform "grubbing and clearing" was considered a bid offer at a zero dollar cost.

R.C. 5525.01 provides that the director may award a contract to a bidder after his determination that a bid pricing "error" was not substantial. Pursuant to R.C. 5525.01, the bid was treated as responsive and one which offered all work, including grubbing and clearing, to be completed at a total contract price of $3,818,130.

The trial court found, in adopting the magistrate's decision filed March 25, 1997:

"In this case, acceptance of the Scurlock bid did not change the total cost of the proposal. As ODOT points out, taxpayers were rewarded by not having to spend the estimated $100,000 required to prepare the project site [by means of clearing and grubbing]. (Fn. omitted.) Moreover, contrary to [appellants'] view, the

court finds that under the circumstances, there was no competitive advantage to Scurlock over [appellants] or other bidders. The magistrate correctly found that at 2.5% of the total project cost, the error in leaving the clearing and grubbing portion of the proposal blank was not a substantial error as contemplated by R.C. 5525.01. * * *" Trial court decision filed October 6, 1997, at 5–6.

From the record, this court finds that the trial court did not err in determining that the Scurlock bid "error" was not substantial and that the director did not abuse his discretion in accepting the Scurlock bid as responsive. Next, we must determine whether the court abused its discretion in finding that the bid did not give Scurlock an unfair competitive advantage over other bidders.

It is axiomatic that the performance of the contract formed by the acceptance of a winning bid must include all the material parts of the bid, as they were described, delineated, or otherwise identified in the bid by the bidder at the time of the bid opening. See R.C. 5525.01 *et seq.* Any aspect of the bid that affects the price will prejudice other bidders if the price-affecting aspect is waived or allowed to be waived from the bid after the bid opening. "Although the law gives the commissioners the authority to waive irregularities or requirements as to the form of the bids, * * * they have no authority to waive defects which affect or destroy competitive bidding." *Coleman,* 84 Ohio App. at 152–153, 39 O.O. at 172, 83 N.E.2d at 809.

In the instant matter, ODOT did not waive the "error" but determined to treat the form of the bid as declaring that clearing and grubbing "work was to be done at [a zero dollar] cost," and awarded the contract to Scurlock on that basis. (Magistrate's decision, at 2.) Scurlock accepted all the material parts of the contract, including grubbing and clearing at the zero dollar cost.

The total Scurlock bid was approximately $165,700 lower than appellants' bid, including the $100,000 savings from the "no cost" site preparation. The trial court found that the Scurlock bid was deemed complete in its terms and that ODOT had accepted the Scurlock bid based upon a "bid" of a zero dollar cost for grubbing and clearing. We find that the price-affecting aspect of the Scurlock bid was not waived and did not provide Scurlock with a competitive advantage not available to other bidders.

This court has held that a submitted bid responded to the required specifications in all material respects and contained no irregularities or deviations which would affect the amount of the bid or give a competitive advantage where the bid proposal was signed and the bidder was at all times bound by the bid submitted. *W.C.I./Waltek* at 12. Bidders are "bound" by their submitted bids by the bid terms and by virtue of a "bid guaranty in the form of a certified check * * * or bid bond" pursuant to R.C. 5525.01.

The record indicates that Scurlock posted the "bid bond" required by R.C. 5525.01. However, appellants contend that the Scurlock bond was defective and that the defective bond permitted Scurlock to withdraw from or waive its bid without penalty, thereby giving Scurlock a competitive advantage in its bid not enjoyed by other bidders.

R.C. 5525.01 provides in part that "[t]he director shall permit a bidder to withdraw the bidder's bid from consideration, without forfeiture of the certified check or bid bond filed with the bid" upon a showing of substantial error in the calculation of the bid. While it is true that the statute permits a bidder in error to seek withdrawal of its bid from consideration, such permission is discretionary with the director. The same statutory section authorizes:

" * * * In the event the director decides the conditions for withdrawal have not been met, the director may award the contract [encompassing the bid in error] to such bidder. If such bidder does not then enter into a contract and furnish the contract bond as required by law, the director may declare forfeited the certified check or bid bond * * * and award the contract to the next higher bidder. * * * " R.C. 5525.01.

By virtue of this statutory authorization, the bidder in error submits to be bound by the terms of his bid or face the possibility of losing his bond. ODOT did not waive the "error" in Scurlock's bid but required Scurlock to perform under its bid proposal or risk forfeiture of its bid bond. Scurlock was locked into its bid by virtue of the forfeiture provisions of R.C. 5525.01 regarding its bid bond.

The trial court found that the "failure to execute the proper bid bond is likewise not fatal to the awarding of this contract to Scurlock." (Magistrate's decision, at 4.) The court found that, upon award of the contract to Scurlock and its subsequent posting of the contract bonds required by R.C. 5525.16, the purpose of the bid bond had been fulfilled and the question of competitive advantage with regard to the bond was rendered moot. (Trial court decision, at 7–8.) This court agrees that the purpose of the "bid bond" was fulfilled upon Scurlock's acceptance of the contract and posting of the performance and payment bonds pursuant to R.C. 5525.16. The question of a defective bond is therefore moot, and this court will not address the matter of the Scurlock bid bond.

The record provides sufficient evidence to support the magistrate's conclusion that Scurlock could not "easily or automatically withdraw a contract, at least in the circumstances of this case," and that Scurlock was indeed ultimately bound by both its bid and bond. The bid did not give Scurlock an unfair competitive advantage over other bidders. (Magistrate decision, at 4.) The record further

provides support for the trial court's determination that appellants failed to carry their burden of proving by clear and convincing evidence that it was entitled to the preliminary injunction it had requested. There was evidence to support the court's denial of appellants' motions for declaratory and injunctive relief as well as its affirmation of ODOT's decision to award the bid contract to appellee Scurlock.

For the foregoing reasons, this court finds that the trial court did not abuse its discretion in determining that appellees' contract was valid and in denying appellants' request for injunctive relief. Appellants' assignments of error are overruled, and the trial court's decision is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and LAZARUS, JJ., concur.